UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SONJA SKINNER, : Case No. 3:09-cv-432
:
    Plaintiff, : Judge Timothy S. Black
:
vs. :
:
GUARANTEE TRUST LIFE :
INSURANCE COMPANY, :
:
    Defendant. :

### DECISION AND ENTRY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 18)

This case is before the Court on the Motion for Summary Judgment filed by Defendant Guarantee Trust Life Insurance Company ("Guarantee"). (Doc. 18). Plaintiff filed a Memorandum in Opposition to Defendant's Motion. (Doc. 22). Defendant then filed a Reply. (Doc. 24). Defendant's Motion is now ripe for decision.

### I. FACTS

Many of the facts at issue in this case are not disputed. Plaintiff Sonja Skinner is the wife of Daniel Skinner, who died on or about September, 1, 2008. At the time of his death, Mr. Skinner was insured under a Certificate of Insurance issued under an Accidental Death and Dismemberment insurance policy ("the policy") issued by Defendant Guarantee.

At issue is the following policy language relied upon by the parties without dispute:

> If, while insured for this benefit, the Insured Accountholder suffers Accidental Bodily Injury which, independently of all other causes, results in any of the losses described in this benefit within 365 days after the date of

> the accidental causing the loss, we will pay the benefits stated below, subject to the Limitations provision.
>
> . . . payments for the accidental death will be made under the terms of the Beneficiary and Assignment provisions of the Certificate . . .
>
> The Principal Amount of the Insured Accountholder is the Basic Amount of Coverage plus the Optional Supplemental Amount of Coverage shown on the Schedule page.
>
> Accidental Death. For loss of life, the Principal Amount is payable.

(Doc. 18-1). The following limitations apply to the general grant of coverage under the policy:

> No benefits shall be paid if loss, directly or indirectly, results from:
>
> (1)  Suicide, attempted suicide, or intentionally self-inflicted injury, while sane or insane;
>
> (2)  The commission of, or attempt to commit, an assault or a felony;
>
> (3)  *Except as prescribed by a doctor, the use of alcohol, PCP (also known as "Angel Dust"), LSD, or other hallucinogens, cocaine, heroin or other narcotics, amphetamines or other stimulates, barbiturates or other sedatives or tranquilizers, or any combination of two or more of these substances.*
>
> (4)  Travel or flight as a pilot or crew member in any kind of aircraft; or
>
> (5)  War, wether or not declared, or taking part in an insurrection.

(Doc. 18-1) (emphasis added).

The parties do not dispute that Mr. Skinner died as the result of methadone intoxication, that methadone is a narcotic drug, and that Mr. Skinner did not have a prescription for methadone at the time of his death. Plaintiff had a prescription for methadone at the time of Mr. Skinner's death, and therefore, methadone was present in

Mr. Skinner's household. However, Plaintiff believes that Mr. Skinner did not intentionally or voluntarily use her methadone, and instead, believes that he innocently and mistakenly ingested her methadone pills thinking that he was taking his own prescribed medication. (Doc. 22-1).

According to Plaintiff, Mr. Skinner customarily awoke at 2:00 a.m. to go to the kitchen and take his prescription medication. (Doc. 22-1). Plaintiff states in an affidavit that, when doing so, Mr. Skinner "[t]ypically" did not turn the lights on in the kitchen so that he did not disturb Plaintiff who slept in an adjacent room. (Doc. 22-1). Plaintiff also states that Mr. Skinner followed this customary practice on September 8, 2008, and states her belief that her "husband accidentally took [her] methadone pills because he took the medication in the dark." (Doc. 22-1).

Following Mr. Skinner's death, Plaintiff made a claim under the policy. Defendant denied coverage based on the policy limitations, concluding that Mr. Skinner's death resulted, directly or indirectly, from the non-prescribed "use" of narcotics. Plaintiff then filed this action asserting that Defendant breached the policy by refusing to pay and that such refusal amounts to bad faith. Defendant now moves for summary judgment on all claims.

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *see also*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).

"Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in the light most favorable to the non-moving party." *Id*. Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

### III. ANALYSIS

A. <u>**Breach of Contract Claim**</u>

Defendant argues that no benefits are payable here because Mr. Skinner died from the non-prescribed use of a narcotic, namely methadone, and therefore, benefits are clearly and unambiguously excluded under the terms of the coverage limitations. Plaintiff contends that benefits are payable because Mr. Skinner did not "use" methadone "within the meaning contemplated by the insurance policy" because he ingested the drug unintentionally and involuntarily. Specifically, Plaintiff contends that the plain and

ordinary meaning of the term "use" only includes voluntary or intentional acts of consuming. Defendant responds by essentially arguing that the term "use" includes voluntary, involuntary, intended and unintended consumption of narcotics, and, therefore, Mr. Skinner's actual intent is irrelevant.

The Court will assume that Plaintiff's opinion testimony[1] sufficiently creates a question of fact as to whether Mr. Skinner involuntarily used Plaintiff's methadone,[2] and, accordingly, the Court will address issues regarding contract interpretation. In that regard, both parties cite and apply Ohio law.

"[T]he interpretation of an insurance contract is a question of law." *Fortney & Weygandt, Inc. v. American Mfrs. Mut. Ins. Co.*, 595 F.3d 308, 310 (6th Cir. 2010) (citing *Leber v. Smith*, 70 Ohio St.3d 548, 639 N.E.2d 1159 (1994)). An insurer seeking to "defeat coverage . . . must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is the only one that can fairly be placed on the language in question." *Id.* (citing *Andersen v. Highland House Co.*, 93

---

[1] In an effort to prove that Mr. Skinner accidentally mistook her methadone for his prescription medication, Plaintiff's affidavit sets forth her lay opinion based on Mr. Skinner's purported "habit" of taking his prescription mediation in the dark during early morning hours. Pursuant to Fed. R. Evid. 406, "[e]vidence of the habit of a person . . . whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person . . . on a particular occasion was in conformity with the habit[.]" Pursuant to Fed. R. Evid. 701, a lay witness can express an opinion if, in addition to other requirements, the opinion is "rationally based on the perception of the witness[.]"

[2] Here, for summary judgment purposes, the Court is inclined to accept Plaintiff's testimony of Mr. Skinner's "habits" as sufficient to demonstrate that, on September 8, 2008, Mr. Skinner went to his kitchen for the purpose of taking his prescription medication, and that he did not turn on the lights. The question then becomes whether Plaintiff's opinion that Mr. Skinner misidentified his medication is rationally based on her perception since there are no facts showing that Mr. Skinner had a history of misidentifying his medication from Plaintiff's medication in the dark. In fact, despite an apparently repeated practice of taking his medication in a dark room, Plaintiff testifies that she has "never known [her] husband to take [her] methadone pills" and that she never knew him to take any medication not prescribed to him, or in amounts not prescribed to him. (Doc. 22-1). The Court questions whether, in circumstances such as this, evidence of one's habit, without more, can sufficiently support a lay opinion that one's failure to conform to that habit on a particular occasion must have been accidental or involuntary.

Ohio St.3d 547, 757 N.E.2d 329 (2001)). Nevertheless, "the mere possibility of multiple readings of a term does not necessarily warrant a finding of ambiguity." *Nationwide Life Ins. Co. v. Canton*, No. 09AP-939, 2010 WL 3405745, at *5 (Ohio App. Aug. 31, 2010) (citing *State v. Porterfield*, 106 Ohio St.3d 5, 829 N.E.2d 690 (2005)).

"When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 219, 797 N.E.2d 1256 (2003) (citations omitted). In doing so, courts must "examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy" and employ "the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy." *Id.* (citations omitted); *see also Safeco Ins. Co. v. White*, 122 Ohio St.3d 562, 913 N.E.2d 426 (Ohio 2009). Where the language used is clear, such language controls, and the court cannot look at materials outside of the contract to determine the parties' intent. *Id.*

Where an ambiguity does exist, the court can "consider extrinsic evidence to ascertain the parties' intent[,]" but in doing so, cannot "alter a lawful contract by imputing an intent contrary to that expressed by the parties." *Id.* (citations omitted). With regard to insurance policies, ambiguities are "ordinarily interpreted against the insurer and in favor of the insured[,]" though such a "rule will not be applied so as to provide an unreasonable interpretation of the words of the policy." *Id.* at 220 (citations omitted). The language employed in "'an exclusion in an insurance policy will be interpreted as applying only to

that which is *clearly* intended to be excluded.'" *Lager v. Miller-Gonzalez*, 120 Ohio St.3d 47, 896 N.E.2d 666, 669 (2008) (emphasis in original) (citations omitted).

Here, the term "use" is not specifically defined in the policy, and, therefore, the Court must employ its plain and ordinary meaning, which is "the act or practice of using something." *See Use Definition*, Webster's Third New International Dictionary, Unabridged, http://unabridged.merriam-webster.com (last visited Apr. 22, 2011). To use something, is "to put into action or service[.]" *Id*. Thus, the plain an ordinary meaning of the phrase "use of narcotics" means the act of putting narcotics into action.

Absent modification or qualification of the phrase "use of . . . narcotics," the plain and ordinary meaning of the limitation includes all "use of . . . narcotics" including, but not limited to, voluntary, involuntary, intentional, unintentional, heavy, moderate, light, occasional, frequent, infrequent, sporadic, routine, daily, weekly, monthly, or one-time "use." The Court will not read an ambiguity in a contract where one does not necessarily exist.

Any purported ambiguity or lack of clarity in the policy's use of the term "use," without modification, can be cured by examining the language of the contract as a whole, particularly the language employed in the limitations portion of the policy. Specifically, the first coverage limitation provides that: "[n]o benefits shall be paid if loss, directly or indirectly results from . . . [s]uicide, attempted suicide, or *intentionally* self-inflicted injury[.]" (Doc. 18-1) (emphasis added). Absent modification or qualification, the plain and ordinary meaning of the word "self-inflicted" is "inflicted by one's own hand[.]" *See*

*Self-Inflicted Definition*, Webster's Third New International Dictionary, Unabridged, http://unabridged.merriam-webster.com (last visited Apr. 22, 2011).

Certainly, the argument advanced by Plaintiff regarding the term "use" can also be advanced concerning the term "self-inflicted," where no modifier is present. "Self-inflicted" can just as easily imply some intent to inflict injury upon one's self, especially when used in conjunction with the words "suicide" and "attempted suicide,"[3] as it is in Defendant's policy. Yet, as opposed to the term "use," the language of the policy specifically modifies the term "self-inflicted" with the word "intentionally." Thus, the Court concludes that if the limitation was only intended to exclude the intentional or voluntary "use of narcotics" from coverage, the word "intentional" or "voluntary" would have been included in the limitation.

Accordingly, because it is undisputed that Mr. Skinner died as the result of the methadone intoxication, he necessarily died as the result of the "use" of narcotics, and, therefore, coverage is expressly excluded. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's breach of contract claim is **GRANTED**.

B.  **Bad Faith Claim**

Defendant next contends that, because there was no breach of contract, summary judgment on Plaintiff's bad faith claim is proper as a matter of law. Here, Plaintiff's bad faith claim is premised on the contention that she has a valid claim for coverage, and that

---

[3] The plain and ordinary meaning of the term "suicide" means "the act or an instance of taking one's own life *voluntarily* and *intentionally*[.]" *See Suicide Definition*, Webster's Third New International Dictionary, Unabridged, http://unabridged.merriam-webster.com (last visited Apr. 25, 2011) (emphasis added).

-8-

"Defendant acted in bad faith toward Plaintiff by intentionally failing to pay[.]" (Doc. 2). Such a claim is dependent upon a showing that Plaintiff's claim was covered under the policy. *See Essad v. Cincinnati Ins. Co.*, No. 00 CA 199, 2002 WL 924439, at *7 (Ohio App. Apr. 16, 2002) (stating that "most of the time bad faith claims and breach of contract claims will be asserted together and the basis for both claims is the refusal to pay" and that "the success of the tort claim hinges on the success of the contract claim"); *compare Bullet Trucking Inc. v. Glen Falls Ins. Co.*, 84 Ohio App.3d 327, 616 N.E.2d 1123 (Ohio App. 1992).[4]

Thus, because Defendant is entitled to summary judgment on the merits of Plaintiff's breach of contract claim, Defendant is also entitled to summary judgment on Plaintiff's bad faith claim. Accordingly, with regard to Plaintiff's claim of bad-faith, Defendant's Motion for Summary Judgment is **GRANTED**.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 18) is **GRANTED**.

**IT IS SO ORDERED.**

Date: 4/28/11

Timothy S. Black
United States District Judge

---

[4] In *Bullet Trucking*, the court noted two types of bad-faith failure to pay claims: (1) refusing to pay in the absence of a lawful basis for refusal; and (2) refusing to pay and intentionally failing to investigate whether a lawful basis exists to refuse the claim. *Bullet Trucking*, 84 Ohio App.3d at 333-34 (citing *Motorists Mut. Ins. Co. v. Said* (1992), 63 Ohio St.3d 690, 590 N.E.2d 1228). Here, the claim alleged by Plaintiff in the Complaint falls within the first category of bad-faith claims, wherein "plaintiff . . . must first prove that the insurer had no lawful basis for refusing to satisfy his contract claim, thereby necessarily establishing the proof necessary for the breach for the breach of contract claim." *Id.*